IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-_____

JOSSE ANTHONY MAZO a/k/a JOSSE ANTHONY MAZO-MAYORQUIN and
MARITZA RIASCOS f/u/b/o MAZO-RIASCOS M.D., LLC,

      Plaintiffs,

v.

JOHN MICHAEL MERRITT, JR., FULL SPECTRUM NUTRITION, LLC, a Florida limited
liability company, and FULL SPECTRUM NUTRITION, INC., a Delaware corporation,

      Defendants.

_____/
_____

VERIFIED COMPLAINT
_____

      Plaintiffs, JOSSE ANTHONY MAZO a/k/a JOSSE ANTHONY MAZO-MAYORQUIN ("Mazo") and MARITZA RIASCOS ("Riascos") F/U/B/O MAZO-RIASCOS M.D., LLC, submits this Verified Complaint against the Defendants, JOHN MICHAEL MERRITT, JR. ("Merritt"), FULL SPECTRUM NUTRITION, LLC, is a Florida limited liability company, and FULL SPECTRUM NUTRITION, INC., a Delaware corporation, as follows:

## PARTIES

      1.    Plaintiff, JOSSE ANTHONY MAZO a/k/a JOSSE ANTHONY MAZO-MAYORQUIN, is a citizen of the State of Florida residing at 6331 Portofino Lane, Melbourne, Florida 32940, and is the spouse of Riascos and Co-Member and Co-Manager with Riascos of MAZO-RIASCOS M.D., LLC, a Florida limited liability company.

      2.    Plaintiff, MARITZA RIASCOS, is a citizen of the State of Florida residing at 6331 Portofino Lane, Melbourne, Florida 32940, and is the spouse of Mazo and Co-Member and Co-

Manager with Mazo of MAZO-RIASCOS M.D., LLC, a Florida limited liability company.

3.      On information and belief, Defendant, JOHN MICHAEL MERRITT, JR., is a citizen of the State of Louisiana with his principal place of residence located at 139 E. Colbert Drive, Minden, Webster Parish, Louisiana 71055.

4.      Defendant, FULL SPECTRUM NUTRITION, LLC, is a Florida limited liability company registered at the direction of Merritt in Florida on October 21, 2016.

5.      Defendant, FULL SPECTRUM NUTRITION, INC, is a Delaware corporation registered at the direction of Merritt in Delaware on June 2, 2017.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331, because the federal claim herein arises out of violations of the Securities Act of 1933 for which the Plaintiffs seek relief pursuant to 15 U.S.C. § 77l and 15 U.S.C. § 77o.

7.      Further, this Court has supplemental subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the claims arising under the Securities Act of 1933 as to form part of the same case or controversy under Article III of the U.S. Constitution.

8.      The Defendants have transacted business in Colorado and engaged in a substantial part of the actions and events giving rise to this action in Colorado Springs, El Paso County, Colorado, including the intentional, knowing, deliberately reckless, and/or negligent material misrepresentations, omissions made to Plaintiffs and solicitation of Plaintiffs' investments totaling One Million One Hundred Thousand Dollars.

9.      Venue is proper in this Court pursuant to 15 U.S.C. § 77l and 28 U.S.C. § 1391, as substantial part of the actions and events giving rise to this action in Colorado Springs, El Paso

County, Colorado, including the omissions, misrepresentations and solicitation of Plaintiffs' investments totaling One Million One Hundred Thousand Dollars.

10.     This Verified Complaint is not a collusive action to confer jurisdiction that the Court would otherwise lack.

## INTRODUCTION

11.     This action is being brought as a result of the intentional, knowing, deliberately reckless, and/or negligent material misrepresentations, omissions, and other misconduct by the Defendants, performed in connection with the solicitation and sale of securities related to Full Spectrum Nutrition, LLC, a Florida limited liability company, and Full Spectrum Nutrition, Inc., a Delaware corporation (together "Full Spectrum Nutrition"), which resulted in Plaintiffs being defrauded out of One Million One Hundred Thousand Dollars. Merritt, individually, and as a controlling person of Full Spectrum Nutrition, devised and implemented a scheme that defrauded the Plaintiffs, in furtherance of Merritt's motive of enriching himself.

## GENERAL ALLEGATIONS

12.     At all times material hereto, Mazo and Riascos have been medical doctors licensed to practice medicine in the State of Florida with their medical office located at 315 E. Nasa Blvd., Melbourne, Florida 32901.

13.     At all times material hereto, Mazo and Riascos maintained a joint business account at the Space Coast Credit Union, Melbourne, Florida, under the name Anthony Mazo-Mayorquin M.D., LLC, a Florida limited liability company formed November 8, 2004.

14.     In or about October 19, 2007, Anthony Mazo-Mayorquin M.D., LLC, a Florida limited liability company, changed its name to Mazo-Riascos M.D., LLC; however, the Mazo and Riascos continued to maintain the Space Coast Credit Union Account in the name of Anthony

Mazo-Mayorquin M.D., LLC (hereinafter "Mazo and Riascos' Space Coast Account").

15.     At all timed material hereto, Merritt maintained a residence at 417 East Kiowa Street, Unit 1105, Colorado Springs, Colorado 80915.

16.     At all times material hereto, Merritt maintained a business checking account in the name of Full Spectrum Nutrition, LLC, a Florida limited liability company, which bank account was under the sole signature authority of Merritt.

17.     In or about May 2017 and continuing thereafter, Merritt induced the Plaintiffs to invest in any equity interest and continue to invest in an equity interest in Full Spectrum Nutrition, LLC, a Florida limited liability company, and Full Spectrum Nutrition, Inc., a Delaware corporation (together "Full Spectrum Nutrition").

18.     Merritt presented Full Spectrum Nutrition as a business to purchase Cannabidiol ("CBD") infused products at below wholesale prices (because of Merritt's business relationship with Folium) and then to market and sell such products at retail to obtain extraordinary net profit margins.

19.     Each of the Plaintiffs and the Defendants are a "person" as defined in 28 U.S.C. § 77b(a)(2).

20.     Merritt had singular control over Full Spectrum Nutrition.

21.     Merritt had singular control over the preparation of the May 2017, written Confidential Business Plan of Full Spectrum Nutrition, Inc., attached hereto as Exhibit "A" and personally presented Exhibit "A" to Plaintiffs in writing in El Paso County, Colorado.

22.     Merritt knew that Exhibit "A" contained intentional, knowing, deliberately reckless, and/or negligent material misrepresentations and/or omissions in order to induce to Mazo and/or Riascos to purchase a, equity interest, including a membership interest in Full Spectrum

4

Nutrition, LLC, and stock in Full Spectrum Nutrition, Inc., including, but not limited to, the following:

    a.   The Forecast, Financial Highlights by Year, and Financing Need were false;

    b.   The Financial Plan, including, Forecast, Key Assumptions, Revenue by Month, Expenses by Month, Net Profit (or Loss) by Year were false;

    c.   The Financing Section, including, Use of Funds, Expected Returns were false;

    d.   The Statements Section, including Projected Profit & Loss, Projected Balance Sheet, Project Case Flow Statement were false.

23.    In order to finalize the proposed sale of the security interests in Full Spectrum Nutrition by Plaintiffs, Merritt and Full Spectrum Nutrition made the following intentional, knowing, deliberately reckless, and/or negligent material misrepresentations and/or omissions <u>in El Paso County, Colorado</u>, in order to induce to Mazo and/or Riascos to purchase an equity interest in Full Spectrum Nutrition.

    a.   Merritt had an ongoing equity interest in Whole Hemp Company, LLC, a Colorado limited liability company, d/b/a Folium Biosciences, a located in Colorado Springs, Colorado, a company fully licensed by the State of Colorado in and prior to 2017 to extract and purify Hemp Oil containing cannabidiol from industrial hemp ("Folium"); Folium is one of the largest hemp oil extraction companies in the United States.  Merritt knew that such a representation was false and deliberately made to Plaintiffs to materially induce them to invest a total of One Million One Hundred Thousand Dollars ($1,100,000.00) in Full Spectrum Nutrition, LLC, a Florida limited liability company and Full Spectrum Nutrition, Inc., a Delaware corporation;

b. Merritt utilized his business relationship with Ryan Lewis, Folium's then Sales Manager, to gain access to and walk the Plaintiffs through Folium's extraction and purification plant in Colorado Springs, Colorado, in order to reinforce the impression upon the Plaintiffs that Merritt had an ongoing equity interest in Folium. Merritt made the walk-through presentation to Plaintiffs falsely and deliberately to materially induce Plaintiffs to invest a total of One Million One Hundred Thousand Dollars ($1,100,000.00) in Full Spectrum Nutrition, LLC, a Florida limited liability company and Full Spectrum Nutrition, Inc., a Delaware corporation;

c. The Confidential Business Plan attached hereto as Exhibit "A" reflected the minimum financial return that could be expected by Plaintiffs.

d. All monies invested by Plaintiffs would be utilized solely for buildout and equipping a Full Spectrum Nutrition business office in Colorado Springs, Colorado and for purchasing at wholesale and then marketing and selling at retail CBD infused products as nutritional supplements and that no monies invested by Plaintiffs would be utilized for any other purpose. In fact, Merritt had secretly been establishing a "wildlife refuge" business in Costa Rica in conjunction with bottling and marketing Costa Rica water under the name "iRescue", which business he would one hundred percent (100%) control and that Merritt intended to divert and, in fact, did divert significant monies invested by Plaintiffs to further Merritt's business in Costa Rica;

e. Full Spectrum Nutrition would not pay any salary to Merritt or otherwise benefit Merritt until such time as the business would produce a net profit sufficient to pay dividends to the shareholders in accordance with the "Expected Return" Section of

Exhibit "A" attached hereto.  Merritt knew the representation was false because (1) he had secretly arranged to be paid commissions from Full Spectrum Nutrition's purchases and/or sales, (2) he arranged to make certain product sales to third party affiliates of Merritt at below the cost which Full Spectrum Nutrition had purchased the products, and when the affiliates sold the said products to third parties, Merritt received a percentage of the profits from the affiliates' sales, and (3) Merritt utilized monies invested by Plaintiffs in Full Spectrum Nutrition to fund his personal business ventures, including, but not limited to the Costa Rica business venture described above.

24.     In material reliance on Defendant's intentional, knowing, deliberately reckless, and/or negligent material misrepresentations, omissions, and other misconduct, Mazo and Riascos made the following wire transfers totaling One Million One Hundred Thousand Dollars ($1,100,000.00) to the Wells Fargo Bank Account of Full Spectrum Nutrition, LLC, from Mazo and Riascos' Space Coast Credit Union account for the purchase of an equity interest in Full Spectrum Nutrition:

a.  May 15, 2017, in the sum of Four Hundred Thousand Dollars ($400,000.00) invested on behalf of Mazo.

b.  June 7, 2017, in the sum of Two Hundred Thousand Dollars ($200,000.00) invested on behalf of Mazo.

c.  July 10, 2017, in the sum of Two Hundred Thousand Dollars ($200,000.00) invested on behalf of Riascos.

d.  July 26, 2017, in the sum of One Hundred Thousand Dollars ($100,000.00) invested on behalf of Riascos.

e.  August 8, 2017, in the sum of One Hundred Thousand Dollars ($100,000.00) invested on behalf of Riascos.

f.  August 23, 2017, in the sum of One Hundred Thousand Dollars ($100,000.00) invested on behalf of Riascos.

## CLAIMS

### FIRST CLAIM FOR RELIEF
**(Violation of Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C § 77l)**
**(Direct Claim Against All Defendants)**

25.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

26.     Each of the Defendants are "Sellers", "Offerors" and/or "Solicitors of securities, in connection with such offerings, as contemplated by the Securities Act of 1933.

27.     Exhibit "A" attached hereto constitutes an offering document and was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading and omitted to state material facts required to be stated therein. The false and misleading statements include:

a.  The Forecast, Financial Highlights by Year, and Financing Need were false;

b.  The Financial Plan, including, Forecast, Key Assumptions, Revenue by Month, Expenses by Month, Net Profit (or Loss) by Year were false;

c.  The Financing Section, including, Use of Funds, Expected Returns were false;

d.  The Statements Section, including Projected Profit & Loss, Projected Balance Sheet, Project Case Flow Statement were false.

28.     The Defendants' oral inaccurate and misleading, untrue statements of material facts, omission to state other facts necessary to make the statements made not misleading, and omission to state material facts required to be stated include those set forth in paragraph 23 above.

29.     Plaintiffs purchased or otherwise acquired securities offered, solicited, or offered pursuant to oral and written intentional, knowing, deliberately reckless, and/or negligent material misrepresentations, omissions, and other misconduct by the Defendants, performed in connection with the solicitation and sale of securities related to Full Spectrum Nutrition, LLC, a Florida limited liability company, and Full Spectrum Nutrition, Inc., a Delaware corporation.

30.     By reasons of the conduct herein alleged, Defendants have violated and/or controlled a person who violated Section 12 of the Securities Act of 1933.

31.     Mazo and Riascos hereby elect to rescind and tender, to those Defendants named in this claim, those securities that Mazo and Riascos own in return for the consideration paid for those securities with interest thereon.

32.     At the time Mazo and Riascos purchased the Full Spectrum Nutrition securities, each of them was without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to making the payments to purchase the securities of Full Spectrum Nutrition.

33.     Less than one (1) year has elapsed from the time Plaintiffs discovered the facts upon which this claim is based to the date of filing of this claim.

**SECOND CLAIM FOR RELIEF**
**(Violation of Section 15 of the Securities Act of 1933, 15 U.S.C § 77o)**
**(Direct Claim against Merritt)**

34.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

35.     Merritt was a controlling person of Full Spectrum Nutrition by virtue of his position and role with Full Spectrum Nutrition, LLC, a Florida limited liability company, and Full Spectrum Nutrition, Inc., a Delaware corporation, as detailed above.

36.     Merritt was a culpable participant in the violation of the Securities Act of 1933

alleged in the First Claim for Relief above.

37.     As a result, Merritt, as a controlling person, is liable for the wrongful conduct and damages sustained by Plaintiffs as a result.

### THIRD CLAIM FOR RELIEF
**(Securities Fraud – Colorado Securities Act)**
**(Direct Claim Against All Defendants)**

38.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

39.     Defendants are jointly and severally liable to Plaintiffs pursuant C.R.S. § 11-51-604(3) and (4), for soliciting and selling securities to Plaintiffs in violation of C.R.S. § 11-51-501(1)(a), (b), and (c).

40.     In connection with the offer, sale and/or purchase of securities, Defendants directly and indirectly: (1) employed devices, schemes and/or artifices to defraud; (2) made untrue statements of material fact and/or omitted to state material facts necessary in order to make their statements, in light of the circumstances under which they were made, not misleading; and/or (3) engaged in acts, practices, or courses of business which operated as a fraud or deceit upon the Plaintiffs.

41.     In making the false and misleading statements and omissions to Plaintiffs, including those set forth in paragraphs 22 and 23 above, Defendants acted with intent to defraud or with reckless disregard for Plaintiffs' interests. At the time Plaintiffs purchased securities from Full Spectrum Nutrition, Plaintiffs did not know, and in the exercise of reasonable care could not have known, that the representations made to Plaintiffs were materially false and misleading; and did not know the true facts which are alleged in this Complaint to have been omitted.

42.     Plaintiffs have suffered damages in the amount of at least One Million One Hundred Thousand Dollars ($1,100,000.00) as a result of their reliance on the Defendants' false and misleading statements and omissions.  Those false and misleading statements and omissions induced Plaintiffs to make the investments which they would not have otherwise made, in whole

or in part, because the misrepresentations and omissions materially altered and/or concealed the true risks of investing in Full Spectrum Nutrition.

43.     Defendants are liable to Plaintiffs for such legal and equitable relief that the Court deems appropriate, including rescission, actual damages, interest at the statutory rate, costs and reasonable attorneys' fees, as provided under C.R.S. § 11-51-604(3).

44.     Plaintiffs stand ready to tender their securities.

45.     Plaintiffs are entitled to recover from the Defendants, jointly and severally, the consideration of One Million One Hundred Thousand Dollars ($1,100,000.00) they paid for the securities, together with interest at the statutory rate, and costs and attorney's fees, as provided in C.R.S. § 11-51-604(4).

### FOURTH CLAIM FOR RELIEF
**(Controlling Person Liability – Colorado Securities Act)**
**(Direct Claim Against Merritt)**

46.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

47.     Full Spectrum Nutrition, LLC, a Florida limited liability company, and Full Spectrum Nutrition, Inc., a Delaware corporation, in connection with Merritt engaged in the primary violations of the Colorado Securities Act.

48.     Merritt, by virtue of his position, and/or undertaking the specific acts described above, was, at the time of the wrongs alleged herein, a controlling person of Full Spectrum Nutrition, LLC, a Florida limited liability company, and Full Spectrum Nutrition, Inc., a Delaware corporation, within the meaning of C.R.S. § 11-51-604(5).

49.     By reason of the conduct alleged herein, Merritt, the Control Defendant is liable, jointly and severally, and to the same extent as Full Spectrum Nutrition, LLC, a Florida limited liability company, and Full Spectrum Nutrition, Inc., a Delaware corporation, for the wrongful

conduct, and is liable to Plaintiffs for the damages Plaintiffs suffered in connection with its purchase of the securities.

50.     Plaintiffs stand ready to tender their securities.

51.     Plaintiffs are entitled to recover from the Defendants, jointly and severally, the consideration of One Million One Hundred Thousand Dollars ($1,100,000.00) they paid for the securities, together with interest at the statutory rate, and costs and attorney's fees, as provided in C.R.S. § 11-51-604(4).

### FOURTH CLAIM FOR RELIEF
**(Common Law Fraud Against All Defendants)**

52.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

53.     Defendants made or caused to be made false representations of material facts and/or failed to disclose material facts to Plaintiffs, as set out with particularity in the foregoing paragraphs, including paragraphs 22 and 23.

54.     At the time of the representations and/or omissions, Defendants knew that the representations were false or were aware that Plaintiffs did not know whether the representations were true or false.

55.     Defendants made the representations with the intent that Plaintiffs would rely on the representations and/or omissions, and in fact Plaintiffs did rely on the representations and/or omissions in investing in Full Spectrum Nutrition

56.     Plaintiffs reliance was reasonable and justified.

57.     Plaintiffs reliance upon Defendants' false statements and omissions of material facts caused Plaintiffs damages.

58.      Plaintiffs have suffered damages in the amount of at least One Million One Hundred Thousand Dollars ($1,100,000.00) as a result of their reliance on the Defendants' false

and misleading statements and omissions.  Those false and misleading statements and omissions induced Plaintiffs to make the investments which they would not have otherwise made, in whole or in part, because the misrepresentations and omissions materially altered and/or concealed the true risks of investing in Full Spectrum Nutrition.

## FIFTH CLAIM FOR RELIEF
### (Civil Theft – Colorado Revised Statutes)
### (Direct Claim Against Merritt)

59.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

60.     Pursuant to Colorado Revised Statutes, section 18-4-401(1), "[a] person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception; or receives, loans money by pawn or pledge on, or disposes of anything of value or belonging to another that he or she knows or believes to have been stolen, and: (a) Intends to deprive the other person permanently of the use or benefit of the thing of value; (b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; [or] (c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit."

61.     Merritt has committed civil theft.

62.     Merritt knowingly obtained, retained, or exercised control over a thing of value, to wit, One Million One Hundred Thousand Dollars ($1,100,000.00) belonging to Plaintiffs or by deception, all of which Plaintiffs demanded to be returned in their January 11, 2018, letter emailed to Merritt.

63.     Merritt knowingly obtained, retained, or exercised control over these things of value with the intent to deprive Plaintiffs permanently of the use or benefit of the One Million One

Hundred Thousand Dollars ($1,100,000.00).

64.     Merritt's refusal to return the One Million One Hundred Thousand Dollars ($1,100,000.00) belonging to Plaintiffs or even respond to the emailed January 11, 2018, demand is evidence of Merritt's specific intent to permanently deprive Plaintiffs of these things.

65.     Plaintiffs have been injured for actual damages as a result of Merritt's civil theft of Plaintiff's personal property in a sum in excess of One Million One Hundred Thousand Dollars ($1,100,000.00), and Plaintiffs are entitled to treble damages, costs of suit, and a reasonable attorney's fee pursuant to Colorado Revised Statutes, section 18-4-405.

### SIXTH CLAIM FOR RELIEF
**(Civil Theft – Florida Statutes)**
**(Direct Claim Against Merritt)**

66.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

67.     § 812.014(1), Florida Statutes, states: "a person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a)   deprive the other person of a right to the property or a benefit from the property and/or (b)   appropriate the property to his or her own use or to the use of any person not entitled to the use of the property."

68.     § 772.11 "Civil remedy for theft or exploitation", subsection "(1)" states in applicable part: "Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts.

69.     Merritt knowingly obtained, retained, or exercised control over these things of

value with the intent to deprive Plaintiffs permanently of the use or benefit of the One Million One Hundred Thousand Dollars ($1,100,000.00).

70.     Written demand has been made upon Merritt for threefold damages; however, Merritt has failed and refused and continues to fail and refuse to comply with the demand.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons alleged herein, Plaintiff prays for this Court to enter judgment against the Defendants and in favor of Plaintiff for all damages incurred by Plaintiff, including treble or other statutory damages, costs, expenses, attorneys' fees, pre-judgment and post-judgment interest as provided by Colorado and/or Federal law, and such further relief to which it may be entitled.

## JURY DEMAND

Plaintiffs demand a jury trial in this matter.


DATED this 21st day of March, 2018.

S/ CRAIG A. BRAND
_____
**Craig A. Brand, Esq.**
Ganja Law P.L.L.C.
GAI Building
618 E. South Street, Suite 500
Orlando, FL 32801
Telephone: (305) 878-1477
E-mail: Craig@ganjalaw.com
Attorney for Plaintiffs

## <u>VERIFICATION OF COMPLAINT</u>

JOSSE ANTHONY MAZO a/k/a JOSSE ANTHONY MAZO-MAYORQUIN and MARITZA RIASCOS certify that the facts asserted in the foregoing verified complaint are true and accurate to the extent of our knowledge.


S/ JOSSE ANTHONY MAZO

_____          Date: March 19, 2018.
JOSSE ANTHONY MAZO a/k/a JOSSE
ANTHONY MAZO-MAYORQUIN


S/ MARITZA RIASCOS

_____          Date: March 18, 2018.
MARITZA RIASCOS

# EXHIBIT "A"



FARMACEUTICAL CBD
— FROM FARM TO PHARMA —

CONFIDENTIAL

# Full Spectrum Nutrition Inc

---

*From Farm to Pharma*

---

## Business Plan
Prepared May 2017

### Contact Information
John Merritt
john@farmaceuticalcbd.com
561-990-6287
www.FarmaceuticalCBD.com



Full Spectrum Nutrition Inc Delaware

# Table of Contents

Executive Summary....................................................................................................1

    Expectations........................................................................................................1

Company.................................................................................................................3

    Overview............................................................................................................3

Financial Plan...........................................................................................................4

    Forecast............................................................................................................4



    Financing...........................................................................................................7

    Statements........................................................................................................11

Appendix................................................................................................................14

    Profit and Loss Statement.....................................................................................14

    Balance Sheet....................................................................................................17

    Cash Flow Statement...........................................................................................20

**CONFIDENTIAL - DO NOT DISSEMINATE**. This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full Spectrum Nutrition Inc Delaware

# Executive Summary

## Expectations

### Forecast

The forecast of this plan is based on the most conservative model possible. The 3 year projections are based on a 0% growth model.

The revenue is based on selling the status quo 50 kilos per month of the tincture and PURE PCR oil each month for the next 3 years.

Future forecast projections will be higher and could be calculated with various other higher margin revenue streams accounting for a percentage of sales but for the sake of time and the most conservative viewpoint, the 0% growth model is the model showcased in this plan.

### Financial Highlights by Year



1

CONFIDENTIAL - DO NOT DISSEMINATE. This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full Spectrum Nutrition Inc Delaware

## Financing Needed

The financing needed is intended for only the first 3 months or less of business activities. The 100% turnover of inventory per month, creates a revenue stream worthy of running the business with no additional financing needed.

2

CONFIDENTIAL – DO NOT DISSEMINATE. This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full Spectrum Nutrition Inc Delaware

# Company
# Overview

**The ownership structure is as follows:**

**John Merritt** - CEO

- 51% ownership

**David Moceri** - President

- 16% ownership

**Dr. Anthony Mazo** - Shareholder

- 15% ownership

**Bryan Ferrero** - Shareholder

- 9% ownership

**Doug Bishop** - Shareholder

- 9% ownership

3

CONFIDENTIAL - DO NOT DISSEMINATE. This business plan contains confidential, trade secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full Spectrum Nutrition Inc Delaware

# Financial Plan

## Forecast

### Key Assumptions

For the projected revenue, I used two products that we will purchase from Folium on a volume raw material level. The total number of kilos sold (50) is split between the products.

The tincture represents one product and is one of the most popular bulk items with a cost at the near highest level.

The PURE PCR Hemp Oil represents the other product and is also one of the most popular bulk items with a cost near a high level.

### 1. Tincture

- A Supply Agreement Contract will lower the product cost from $0.030 per active mg to $0.010 per active mg cost. **A nearly 65% cost reduction.**

- At this pricing a kilo of active mg formulated tincture will cost our company $10,000.

- The standard pricing we offer the 5-kilo and less customers and leads from Folium for a kilo of active mg formulated tincture is $30,000.

- Gross profit is $20,000 per kilo – minus 10% sales rep commission = Net Profit $17,000 per kilo.

- **This is a 3x markup.**

**25 kilos sold per month at this pricing level results in a net profit = $425,000**

CONFIDENTIAL - DO NOT DISSEMINATE. This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full Spectrum Nutrition Inc Delaware

## 2. PURE PCR Oil

- A Supply Agreement Contract will lower the product cost from $0.025 per active mg to $0.009 per active mg cost. A 64% cost reduction.

- At this pricing a kilo of active mg formulated tincture will cost our company $9,000.

- The standard pricing we offer the 5-kilo and less customers and leads from Folium for a kilo of active mg formulated tincture is $25,000.

- Gross profit is $16,000 per kilo – minus 10% sales rep commission = Net Profit $13,500 per kilo.

- **This is a 2.8x markup.**

**25 kilos sold per month at this pricing level results in a net profit = $337,500**

5

CONFIDENTIAL - DO NOT DISSEMINATE. This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full Spectrum Nutrition Inc Delaware

## Revenue by Month



## Expenses by Month



CONFIDENTIAL - DO NOT DISSEMINATE. This business plan contains confidential, trade secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full Spectrum Nutrition Inc Delaware

## Net Profit (or Loss) by Year



# Financing

## Use of Funds

The use of funds is as follows:

1. $500k paid in for Supply Contract inventory

2. $100k paid in for business set up, contract manufacturing and first monthly operating expenses.

## Sources of Funds

Dr. Mazo will invest $600k seed capital in return for 15% equity in the parent company, Full Spectrum Nutrition Inc., A Delaware company.

7

CONFIDENTIAL - DO NOT DISSEMINATE. This business plan contains confidential, trade secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full Spectrum Nutrition Inc Delaware

## Expected Return

Shareholders are paid dividends monthly. Approximately 70% of Net Profits will be paid out each month to the shareholders through dividend payments.

This 70% number is based on the business model shown in this plan. With this particular model, there is sufficient net profit for the 70% dividend without affecting the company in any way.

In some cases, the percentage amount of the net profit paid each month in dividends may need to be lowered for the benefit of the company.

The 70% Net Profit monthly dividend payout is not a definitive number but only a general guide for the company to follow in the course of dividend payments.

Dividends and Distributions are as follows for FY2018:

**June 2017 - $100k**

- *Mazo $15k*

**July 2017 - $100k**

- *Mazo $15k*

**August 2017 - $500k**

- *Mazo $75k*

**September 2017 - $500k**

- *Mazo $75k*

**October 2017 - $500k**

- *Mazo $75k*

8

**CONFIDENTIAL - DO NOT DISSEMINATE**. This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full Spectrum Nutrition Inc Delaware

**November 2017** - $500k

- *Mazo $75k*

**December 2017** - $500k

- *Mazo $75k*

**January 2018** - $500k

- *Mazo $75k*

**February 2018** - $500k

- *Mazo $75k*

**March 2018**- $500k

- *Mazo $75k*

[Dr. Mazo recoups original investment during this month.]

**April 2018**- $500k

- *Mazo $75k*

**May 2018**- $500k

- *Mazo $75k*

Using the current revenue model, we can make a calculated rate of return of investment for Dr. Anthony Mazo.

End of Month 10 of FY2018 Dr. Anthony Mazo recoups his original investment.

At the end of Fy2018, Dr. Mazo would earn total $180k or yield an 30% ROI.

9

CONFIDENTIAL - DO NOT DISSEMINATE: This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full Spectrum Nutrition Inc Delaware

10.

CONFIDENTIAL - DO NOT DISSEMINATE. This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full Spectrum Nutrition Inc Delaware

# Statements

## Projected Profit & Loss

|  | FY2018 | FY2019 | FY2020 |
|---|---|---|---|
| Revenue | $16,500,000 | $16,500,000 | $16,500,000 |
| Direct Costs | $7,350,000 | $7,350,000 | $7,350,000 |
| Gross Margin | $9,150,000 | $9,150,000 | $9,150,000 |
| Gross Margin % | 55% | 55% | 55% |
| Operating Expenses |  |  |  |
| Salary | $132,000 | $132,000 | $132,000 |
| Employee Related Expenses |  |  |  |
| General Software Costs | $12,000 | $12,000 | $12,000 |
| Office / Warehouse | $48,000 | $48,000 | $48,000 |
| Ambassador Affilate Software | $25,000 | $25,000 | $25,000 |
| Office Furniture and Set up | $6,000 |  |  |
| Contract Manufacturing Expenditures | $300,000 | $300,000 | $300,000 |
| Hey Go To Marketing Expense | $120,000 | $120,000 | $120,000 |
| First, Last and Security Office | $15,000 |  |  |
| Total Operating Expenses | $658,000 | $637,000 | $637,000 |
| Operating Income | $8,492,000 | $8,513,000 | $8,513,000 |
| Interest Incurred |  |  |  |
| Depreciation and Amortization |  |  |  |
| Income Taxes | $0 | $0 | $0 |
| Total Expenses | $8,008,000 | $7,987,000 | $7,987,000 |
| Net Profit | $8,492,000 | $8,513,000 | $8,513,000 |
| Net Profit / Sales | 51% | 52% | 52% |

11

CONFIDENTIAL - DO NOT DISSEMINATE. This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full Spectrum Nutrition Inc Delaware

## Projected Balance Sheet

| As of Period's End | Starting Balances | FY2018 | FY2019 | FY2020 |
|---|---|---|---|---|
| Cash | $100,000 | $2,879,500 | $4,392,500 | $5,905,500 |
| Accounts Receivable | | $0 | $0 | $0 |
| Inventory | | $612,500 | $612,500 | $612,500 |
| Other Current Assets | | | | |
| Total Current Assets | $100,000 | $3,492,000 | $5,005,000 | $6,518,000 |
| Long-Term Assets | | | | |
| Accumulated Depreciation | | | | |
| Total Long-Term Assets | | | | |
| Total Assets | $100,000 | $3,492,000 | $5,005,000 | $6,518,000 |
| Accounts Payable | | $0 | $0 | $0 |
| Income Taxes Payable | | $0 | $0 | $0 |
| Sales Taxes Payable | | $0 | $0 | $0 |
| Short-Term Debt | | | | |
| Prepaid Revenue | | | | |
| Total Current Liabilities | | $0 | $0 | $0 |
| Long-Term Debt | | | | |
| Total Liabilities | | $0 | $0 | $0 |
| Paid-in Capital | $0 | $100,000 | $100,000 | $100,000 |
| Retained Earnings | $100,000 | ($5,100,000) | ($3,608,000) | ($2,095,000) |
| Earnings | | $8,492,000 | $8,513,000 | $8,513,000 |
| Total Owner's Equity | $100,000 | $3,492,000 | $5,005,000 | $6,518,000 |

CONFIDENTIAL - DO NOT DISSEMINATE. This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full Spectrum Nutrition Inc Delaware

| | | | | |
|---|---|---|---|---|
| Total Liabilities & Equity | $100,000 | $3,492,000 | $5,005,000 | $6,518,000 |

## Projected Cash Flow Statement

| | FY2018 | FY2019 | FY2020 |
|---|---|---|---|
| **Net Cash Flow from Operations** | | | |
| Net Profit | $8,492,000 | $8,513,000 | $8,513,000 |
| Depreciation and Amortization | | | |
| Change in Accounts Receivable | $0 | $0 | $0 |
| Change in Inventory | ($612,500) | $0 | $0 |
| Change in Accounts Payable | $0 | $0 | $0 |
| Change in Income Tax Payable | $0 | $0 | $0 |
| Change in Sales Tax Payable | $0 | $0 | $0 |
| Change in Prepaid Revenue | | | |
| **Net Cash Flow from Operations** | **$7,879,500** | **$8,513,000** | **$8,513,000** |
| **Investing & Financing** | | | |
| Assets Purchased or Sold | | | |
| Investments Received | $100,000 | | |
| Change in Long-Term Debt | | | |
| Change in Short-Term Debt | | | |
| Dividends & Distributions | ($5,200,000) | ($7,000,000) | ($7,000,000) |
| **Net Cash Flow from Investing & Financing** | **($5,100,000)** | **($7,000,000)** | **($7,000,000)** |
| Cash at Beginning of Period | $100,000 | $2,879,500 | $4,392,500 |
| Net Change in Cash | $2,779,500 | $1,513,000 | $1,513,000 |
| **Cash at End of Period** | **$2,879,500** | **$4,392,500** | **$5,905,500** |

13

CONFIDENTIAL – DO NOT DISSEMINATE. This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full Spectrum Nutrition, Inc Delaware

# Appendix

# Profit and Loss Statement

## Profit and Loss Statement (With Monthly Detail)

| FY2018 | Jun '17 | Jul '17 | Aug '17 | Sep '17 | Oct '17 | Nov '17 | Dec '17 | Jan '18 | Feb '18 | Mar '18 | Apr '18 | May '18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | $1,375,000 | $1,375,000 | $1,375,000 | $1,375,000 | $1,375,000 | $1,375,000 | $1,375,000 | $1,375,000 | $1,375,000 | $1,375,000 | $1,375,000 | $1,375,000 |
| Direct Costs | $612,500 | $612,500 | $612,500 | $612,500 | $612,500 | $612,500 | $612,500 | $612,500 | $612,500 | $612,500 | $612,500 | $612,500 |
| Gross Margin | $762,500 | $762,500 | $762,500 | $762,500 | $762,500 | $762,500 | $762,500 | $762,500 | $762,500 | $762,500 | $762,500 | $762,500 |
| Gross Margin % | 55% | 55% | 55% | 55% | 55% | 55% | 55% | 55% | 55% | 55% | 55% | 55% |
| Operating Expenses: | | | | | | | | | | | | |
| Salary | $11,000 | $11,000 | $11,000 | $11,000 | $11,000 | $11,000 | $11,000 | $11,000 | $11,000 | $11,000 | $11,000 | $11,000 |
| Employee Related Expenses | | | | | | | | | | | | |
| General Software cost | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| Office/Warehouse | $4,000 | $6,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 |
| Ambassador Affiliate Software | | | | | | | | | | | | |
| Office Furniture and Set-up | $6,000 | $25,000 | | | | | | | | | | |

CONFIDENTIAL - DO NOT DISSEMINATE: This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

14

## Full Spectrum Nutrition Inc, Delaware

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Costs of Manufacturing | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 |
| Sales To Marketing Expenses | | | | | | | | | | |
| Marketing Advertising Expenses | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 |
| First, Test and Security Office | $15,000 | | | | | | | | | |
| Total Operating Expenses | $72,000 | $76,000 | $51,000 | $51,000 | $51,000 | $51,000 | $51,000 | $51,000 | $51,000 | $51,000 |
| Operating Income | $690,500 | $684,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 |
| Interest Incurred | | | | | | | | | | |
| Depreciation and Amortization | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Income Taxes | $684,500 | $688,500 | $663,500 | $663,500 | $663,500 | $663,500 | $663,500 | $663,500 | $663,500 | $663,500 |
| Total Expenses | $690,500 | $686,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 |
| Net Profit | | | | | | | | | | |
| Net Profit / Sales | 50% | 50% | 52% | 52% | 52% | 52% | 52% | 52% | 52% | 52% |



CONFIDENTIAL - DO NOT DISSEMINATE. This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

# Full-Spectrum Nutrition Inc Delaware

| | FY2018 | FY2019 | FY2020 |
|---|---|---|---|
| Revenue | $16,500,000 | $16,500,000 | $16,500,000 |
| Direct Costs | $7,350,000 | $7,350,000 | $7,350,000 |
| Gross Margin | $9,150,000 | $9,150,000 | $9,150,000 |
| Gross Margin/% | 55% | 55% | 55% |
| **Operating Expenses** | | | |
| Salary | $132,000 | $132,000 | $132,000 |
| Employee Related Expenses | $12,000 | $12,000 | $12,000 |
| General Software Costs | $48,000 | $48,000 | $48,000 |
| Office / Warehouse | $25,000 | $25,000 | $25,000 |
| Ambassador Affiliate Software | $6,000 | | |
| Office Furniture and Set Up | $300,000 | $300,000 | $300,000 |
| Contract Manufacturing Expenditures | | | |
| Hey Go To Marketing Expense | $120,000 | $120,000 | $120,000 |
| First, Last and Security Office | $15,000 | | |
| **Total Operating Expenses** | $658,000 | $637,000 | $637,000 |
| Operating Income | $8,492,000 | $8,513,000 | $8,513,000 |
| Interest Incurred | | | |
| Depreciation and Amortization | | | |
| Income Taxes | $0 | $0 | $0 |
| Total Expenses | $8,008,000 | $7,987,000 | $7,987,000 |
| Net Profit | $8,492,000 | $8,513,000 | $8,513,000 |
| Net Profit / Sales | 51% | 52% | 52% |

16

CONFIDENTIAL, DO NOT DISSEMINATE: This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full Spectrum Nutrition Inc Delaware

# Balance Sheet

## Balance Sheet (With Monthly Detail)

| As of Period End | Starting Balances | Jun '17 | Jul '17 | Aug '17 | Sep '17 | Oct '17 | Nov '17 | Dec '17 | Jan '18 | Feb '18 | Mar '18 | Apr '18 | May '18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash | $100,000 | $178,000 | $764,500 | $976,000 | $1,187,500 | $1,399,000 | $1,610,500 | $1,822,000 | $2,033,500 | $2,245,000 | $2,456,500 | $2,668,000 | $2,879,500 |
| Accounts Receivable | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Inventory | | $612,500 | $612,500 | $612,500 | $612,500 | $612,500 | $612,500 | $612,500 | $612,500 | $612,500 | $612,500 | $612,500 | $612,500 |
| Other Current Assets | | | | | | | | | | | | | |
| Total Current Assets | $100,000 | $790,500 | $1,377,000 | $1,588,500 | $1,800,000 | $2,011,500 | $2,223,000 | $2,434,500 | $2,646,000 | $2,857,500 | $3,069,000 | $3,280,500 | $3,492,000 |
| Long-Term Assets | | | | | | | | | | | | | |
| Accumulated Depreciation | | | | | | | | | | | | | |
| Total Long-Term Assets | | | | | | | | | | | | | |
| Total Assets | $100,000 | $790,500 | $1,377,000 | $1,588,500 | $1,800,000 | $2,011,500 | $2,223,000 | $2,434,500 | $2,646,000 | $2,857,500 | $3,069,000 | $3,280,500 | $3,492,000 |
| Accounts Payable | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Income Taxes Payable | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sales Taxes Payable | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Short-Term Debt | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Prepaid Revenue | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

17

CONFIDENTIAL – DO NOT DISSEMINATE. This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full Spectrum Nutrition, Inc. Delaware

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Current Liabilities** | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Long-Term Debt | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total Liabilities** | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Paid-In Capital | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 |
| Retained Earnings | $0 | $0 | ($100,000) | ($600,000) | ($1,100,000) | ($1,600,000) | ($2,100,000) | ($2,600,000) | ($3,100,000) | ($3,600,000) | ($4,100,000) | ($4,600,000) | ($5,100,000) |
| Earnings | $0 | $690,500 | $1,377,000 | $2,088,500 | $2,800,000 | $3,511,500 | $4,223,000 | $4,934,500 | $5,646,000 | $6,357,500 | $7,069,000 | $7,780,500 | $8,492,000 |
| **Total Owner's Equity** | $100,000 | $790,500 | $1,377,000 | $1,588,500 | $1,800,000 | $2,011,500 | $2,223,000 | $2,434,500 | $2,646,000 | $2,857,500 | $3,069,000 | $3,280,500 | $3,492,000 |
| **Total Liabilities & Equity** | $100,000 | $790,500 | $1,377,000 | $1,588,500 | $1,800,000 | $2,011,500 | $2,223,000 | $2,434,500 | $2,646,000 | $2,857,500 | $3,069,000 | $3,280,500 | $3,492,000 |

18

CONFIDENTIAL - DO NOT DISSEMINATE: This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

# Full Spectrum Nutrition, Inc Delaware

| As of Period's End | Starting Balances | FY2018 | FY2019 | FY2020 |
|---|---|---|---|---|
| Cash | $100,000 | $2,879,500 | $4,992,500 | $5,905,500 |
| Accounts Receivable | | $0 | $0 | $0 |
| Inventory | | $612,500 | $612,500 | $612,500 |
| Other Current Assets | | | | |
| Total Current Assets | $100,000 | $3,492,000 | $5,005,000 | $6,518,000 |
| Long-Term Assets | | | | |
| Accumulated Depreciation | | | | |
| Total Long-Term Assets | | | | |
| Total Assets | $100,000 | $3,492,000 | $5,005,000 | $6,518,000 |
| Accounts Payable | | $0 | $0 | $0 |
| Income Taxes Payable | | $0 | $0 | $0 |
| Sales Taxes Payable | | $0 | $0 | $0 |
| Short-Term Debt | | | | |
| Prepaid Revenue | | $0 | $0 | $0 |
| Total Current Liabilities | | $0 | $0 | $0 |
| Long-Term Debt | | | | |
| Total Liabilities | | $0 | $0 | $0 |
| Paid-In Capital | $0 | $100,000 | $100,000 | $100,000 |
| Retained Earnings | $100,000 | ($5,100,000) | ($3,608,000) | ($2,095,000) |
| Earnings | | $8,492,000 | $6,513,000 | $6,513,000 |
| Total Owner's Equity | $100,000 | $3,492,000 | $5,005,000 | $6,518,000 |
| Total Liabilities & Equity | $100,000 | $3,492,000 | $5,005,000 | $6,518,000 |

CONFIDENTIAL - DO NOT DISSEMINATE. This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full Spectrum Nutrition Inc Delaware

# Cash Flow Statement

## Cash Flow Statement (With Monthly Detail)

| | FY2019 | Jun '17 | Jul '17 | Aug '17 | Sep '17 | Oct '17 | Nov '17 | Dec '17 | Jan '18 | Feb '18 | Mar '18 | Apr '18 | May '18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Net Cash Flow from Operations** | | | | | | | | | | | | | |
| Net Profit | | $690,500 | $686,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 |
| Depreciation and Amortization | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Change in Accounts Receivable | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Change in Inventory | | ($602,500) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Change in Accounts Payable | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Change in Income Tax Payable | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Change in Sales Tax Payable | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Change in Prepaid Revenue | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Net Cash Flow from Operations** | | $78,000 | $686,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 | $711,500 |
| **Investing & Financing** | | | | | | | | | | | | | |

20.

CONFIDENTIAL - DO NOT DISSEMINATE. This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

# Full Spectrum Nutrition Inc Delaware

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Assets Purchased or Sold | $100,000 | | | | | | | | | | |
| Investments Received | | | | | | | | | | | |
| Change in Long Term Debt | | | | | | | | | | | |
| Change in Short-Term Debt | | | | | | | | | | | |
| Dividends & Distributions | ($100,000) | ($500,000) | ($500,000) | ($500,000) | ($500,000) | ($500,000) | ($500,000) | ($500,000) | ($500,000) | ($500,000) | ($500,000) |
| Net Cash Flow from Investing & Financing | $0 | ($100,000) | ($500,000) | ($500,000) | ($500,000) | ($500,000) | ($500,000) | ($500,000) | ($500,000) | ($500,000) | ($500,000) |
| Cash at Beginning of Period | $100,000 | $178,000 | $764,500 | $976,000 | $1,187,500 | $1,399,000 | $1,610,500 | $1,822,000 | $2,033,500 | $2,245,000 | $2,456,500 |
| Net Change in Cash | $78,000 | $586,500 | $211,500 | $211,500 | $211,500 | $211,500 | $211,500 | $211,500 | $211,500 | $211,500 | $211,500 |
| Cash at End of Period | $178,000 | $764,500 | $976,000 | $1,187,500 | $1,399,000 | $1,610,500 | $1,822,000 | $2,033,500 | $2,245,000 | $2,456,500 | $2,668,000 | $2,879,500 |

21

CONFIDENTIAL - DO NOT DISSEMINATE. This business plan contains confidential, trade secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.

Full-Spectrum Nutrition Inc, Delaware

| | FY2018 | FY2019 | FY2020 |
|---|---|---|---|
| Net Cash Flow from Operations | | | |
| Net Profit | $8,492,000 | $8,513,000 | $8,513,000 |
| Depreciation and Amortization | $0 | $0 | $0 |
| Change in Accounts Receivable | $0 | $0 | $0 |
| Change in Inventory | ($12,500) | $0 | $0 |
| Change in Accounts Payable | $0 | $0 | $0 |
| Change in Income Tax Payable | $0 | $0 | $0 |
| Change in Sales Tax Payable | $0 | $0 | $0 |
| Change in Prepaid Revenue | $0 | $0 | $0 |
| Net Cash Flow from Operations | $7,879,500 | $8,513,000 | $8,513,000 |
| Investing & Financing | | | |
| Assets Purchased or Sold | $100,000 | | |
| Investments Received | | | |
| Change in Long-Term Debt | | | |
| Change in Short-Term Debt | ($5,000,000) | ($7,000,000) | ($7,000,000) |
| Dividends & Distributions | | | |
| Net Cash Flow from Investing & Financing | ($5,100,000) | ($7,000,000) | ($7,000,000) |
| Cash at Beginning of Period | $100,000 | $2,879,500 | $4,392,500 |
| Net Change in Cash | $2,779,500 | $1,513,000 | $1,513,000 |
| Cash at End of Period | $2,879,500 | $4,392,500 | $5,905,500 |

22

CONFIDENTIAL - DO NOT DISSEMINATE: This business plan contains confidential, trade-secret information and is shared only with the understanding that you will not share its contents or ideas with third parties without the express written consent of the plan author.