IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-00831-RBJ

JOSSE ANTHONY MAZO a/k/a Josse Anthony Mazo-Mayorquin and
MARITZA RIASCOS f/u/b/o MAZO-RIASCOS M.D., LLC,

      Plaintiffs,

v.

JOHN MICHAEL MERRITT, JR.
FULL SPECTRUM NUTRITION LLC, a Florida limited liability company, and
FULL SPECTRUM NUTRITION, INC., a Delaware corporation,

      Defendants,

and

JOHN MICHAEL MERRITT, JR, individually and on behalf of himself and other members of
Full Spectrum Nutrition, Inc. a Delaware corporation, and
FULL SPECTRUM NUTRITION, LLC, a Florida limited liability company,

      Counterclaim and Crossclaim Plaintiffs,

v.

JOSSE ANTHONY MAZO a/k/a Josse Anthony Mazo-Mayorquin and
MARITZA RIASCOS f/u/b/o Mazo-Riascos M.D., LLC;
BRYAN ROBERT FERRERO;
DOUGLAS EDWARD BISHOP;
NATALIA SWINDLER a/k/a Natalia Radzuik;
FULL SPECTRUM NUTRITION INT, INC., a Florida corporation;
SACRED ROOT, INC., a Colorado corporation; and
SACRED ROOT, LLC, a Colorado limited liability corporation,

      Counterclaim Defendants;

and

FULL SPECTRUM NUTRITION, INC., a Delaware corporation,

      Crossclaim Defendant.

## ORDER ON MOTIONS TO DISMISS

There are two partial motions to dismiss before the Court. First, the original plaintiffs—now acting as counterclaim defendants—Josse Anthony Mazo, Maritza Riascos, and Mazo-Riascos M.D., LLC ("M-R, LLC") move to dismiss the first and second claims set forth in defendants' counterclaim. Mot. to Dismiss, ECF No. 22; Defs.' Answer to Am. Compl., Counterclaims, Crossclaims, and Joinder of Parties, ECF No. 11. Second, counterclaim defendant Full Spectrum Nutrition Int, Inc. ("FSN Int") moves to dismiss the first, second, third, fourth, seventh, and eighth claims in the counterclaim. Mot. to Dismiss, ECF No. 32. For the reasons stated below, the first motion to dismiss, ECF No. 22, is GRANTED, and the second motion to dismiss, ECF No. 32, is GRANTED in part and DENIED in part.

## I. BACKGROUND

Plaintiffs' amended complaint alleges very basic facts of a business deal gone wrong. *See* Am. Compl., ECF No. 8. Plaintiffs, who are married, are medical doctors from Florida. From May 2017 to August 2017, Drs. Mazo and Riascos allege that they invested $1.1 million in two of defendant John Merritt's businesses, Full Spectrum Nutrition, LLC ("FSN, LLC") and Full Spectrum Nutrition, Inc. ("FSN, Inc.") (collectively referred to as "Full Spectrum Nutrition" or "FSN"). *Id.* at ¶24. Full Spectrum Nutrition sells cannabis-derived products such as cannabidiol ("CBD").[1] Plaintiffs' allege that they decided to invest in Full Spectrum Nutrition only after Mr. Merritt wrongfully induced them to invest in his companies by using false

---

[1] According to the counterclaim, CBD is a cannabis-derived compound that many believe has significant medical benefits. *See* ECF No. 48 at ¶2. CBD is typically less regulated compared to marijuana because it is nonpsychoactive—meaning it doesn't produce a high normally associated with recreational marijuana use. *Id.*

financial reports, false projected cash flows, and false projected profits and losses. ECF No. 8 at ¶22.

Plaintiffs allege that Mr. Merritt was to use plaintiffs' money for two specific purposes: (1) to expand Full Spectrum Nutrition's office in Colorado Springs, and (2) to purchase CBD-infused products as nutritional supplements so the company could sell the products at retail prices. *Id.* at ¶23. Instead, plaintiffs allege that Mr. Merritt comingled their investment money and used it to fund two of his other businesses—a wildlife refuge and a bottled water company called "iRescue." *Id.* Both companies are based in Costa Rica. *Id.* Plaintiffs seek to recover their lost investment.

Mr. Merritt tells a different story. He alleges that Dr. Mazo was a wholesale purchaser of Mr. Merritt's CBD-products produced and sold by FSN. ECF No. 48 at ¶3. According to Mr. Merritt, Mr. Mazo expressed interest in breaking into the CBD-business and wanted to invest in FSN, Inc. *Id.* After plaintiffs invested $1.1 million into Mr. Merritt's companies, Mr. Merritt alleges that plaintiffs conspired to steal his companies. *Id.* at ¶4. The alleged conspiracy first included embezzling assets, looting FSN's facility, and stealing FSN's CBD-products. *Id.* at ¶5. Counterclaim defendants then allegedly started new companies using similar names as Mr. Merritt's companies to launder money, sell the stolen products, and cash illegal checks. *Id.*

However, a careful reading of the counterclaim appears to show that the real culprits of the alleged wrongdoing are three named counterclaim defendants who were yet to be served at the time of the April 10, 2018 scheduling conference: Bryan Ferrero, Douglas Bishop, and Natalia Swindler.[2] *See* ECF No. 48 at ¶64. Mr. Ferrero became acquainted with Mr. Merritt in

---

[2] On July 15, 2018 counterclaim plaintiffs served Ms. Swindler, Sacred Root, Inc., and Sacred Root, LLC. *See* ECF Nos. 26–28. On December 13, 2018 counterclaim plaintiffs finally served Mr. Ferrero in his individual capacity and as the registered agent for two other named counterclaim defendants: iThrive, LLC and Ubiquitous Asset Group, LLC. *See* ECF Nos. 50–52. Mr. Bishop has yet to be served.

August 2016, and later became an initial investor, shareholder, and board member of FSN, Inc. *Id.* at ¶¶27, 34. Mr. Bishop presumably got involved in FSN when his cousin, Mr. Ferrero, convinced him to invest in Mr. Merritt's companies. Mr. Bishop is a shareholder and board member of FSN, Inc. *Id.* at ¶18. Finally, Ms. Swindler was an employee of FSN, and according to Mr. Merritt, Ms. Swindler and Mr. Ferrero were romantically involved. *Id.* at ¶51. In November 2017, Mr. Merritt fired Ms. Swindler for "poor performance and disruptive behavior," which, according to him, potentially served as the catalyst for the alleged conspiracy. *Id.* at ¶¶55, 62. The counterclaim asserts that Mr. Ferrero, Mr. Bishop, and Ms. Swindler, "and potentially Mazo and Riascos," launched a campaign to take over FSN. *Id.* at ¶62. The counterclaim continues, stating that "Swindler, Ferrero, and D. Bishop quickly contacted Mazo, making false accusations and telling him lies about Merritt's conduct, in an effort to turn Mazo against Merritt and stage a coup." *Id.* at ¶64. The main reason Mr. Merritt believes that Mr. Mazo was involved in the alleged conspiracy is because Mr. Mazo made an unannounced visit to FSN, LLC's facility on November 20, 2017. *Id.* at ¶54. Mr. Merritt suspects that Mr. Mazo made this trip on this date because Mr. Merritt was at a trade exposition in Medellin, Colombia. *Id.* This opening provided Mr. Mazo an opportunity to inspect the profit and loss statements, bank balances, and product inventory, which showed an inventory of $392,000 of CBD product. *Id.* In the alternative, the counterclaim states that Mr. Mazo and Ms. Riascos may have already been part of the conspiracy. *Id.* at ¶65.

<u>Procedural History</u>

Plaintiffs filed their complaint on April 10, 2018. ECF No. 1. They filed an amended complaint on May 22, 2018, making it the operative complaint. ECF No. 8. Defendants filed an

answer to the amended complaint, and as part of that answer, filed a lengthy counterclaim.[3]  ECF

No. 11.  Plaintiffs, now acting as counterclaim defendants, filed two partial motions to dismiss

defendants' counterclaim.  ECF Nos. 22, 32.  Defendants filed a response to both motions, ECF

Nos. 23, 45, and plaintiffs replied to the first response, ECF No. 25, but not the second response.

As such, both motions are ripe for review, and I address each one below.

## II. STANDARD OF REVIEW

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the complaint must contain

"enough facts to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, L.L.C. v.*

*Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  A plausible claim is a claim that "allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  While the Court must accept the well-pleaded allegations of the complaint as

true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d

1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true.  *Iqbal*,

556 U.S. at 681.  However, so long as the plaintiff offers sufficient factual allegations such that

the right to relief is raised above the speculative level, he has met the threshold pleading

standard.  *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th

Cir. 2008).

---

[3] On December 5, 2018 I granted an unopposed motion to amend defendants' answer and counterclaim.
Defs.' Am. Answer to Am. Compl., Counterclaims, Crossclaims, and Joinder of Parties, ECF No. 48.
This would normally moot both motions to dismiss since they addressed the first counterclaim, ECF No.
11.  However, in this instance, defendants sought leave to amend the caption only.  *See* Unopposed
Motion to Amend, ECF No. 46 at 3.  Thus, plaintiffs' motions to dismiss remain valid.

# III. ANALYSIS

## A. __Counterclaim Defendants Mazo, Riascos, and M-R, LLC's Motion to Dismiss the First and Second Claims of the Counterclaim.__

Counterclaim defendants (Mazo, Riascos, and M-R, LLC) argue that counterclaim plaintiffs' (Merritt, FSN, LLC, and Merritt as a shareholder on behalf of FSN, Inc.) RICO and COCCA claims should be dismissed for failure to state a claim upon which relief may be granted.[4]  I agree.

### 1.  RICO and COCCA Claims for Relief.

In their motion and response, the parties treat the RICO claim and COCCA claim in the exact same manner.  Therefore, the Court will do the same.[5]

Counterclaim defendants' first argument is that neither claim alleges any wrongdoing by M-R, LLC.  ECF No. 22 at 6.  They next argue that any allegations against Mazo and Riascos are conclusory and fail the heightened pleading standards set forth in Fed. R. Civ. P. 9(b).  *See id.* at 6–8.  Finally, counterclaim defendants argue that counterclaim plaintiffs failed to properly allege a RICO violation—specifically, the "continuity" requirement.  *Id.* at 8.  They allege that the allegations amount to nothing more than a single, narrowly focused scheme with no threat of future harm.  *Id.* at 8–9.

In response, counterclaim plaintiffs argue that the movants engaged in a pattern of racketeering activities aimed at stealing Merritt's companies and those companies' assets and intellectual property.  ECF No. 23 at 6.  Counterclaim plaintiffs alleged that M-R, LLC, which

---

[4] To avoid any confusion, for the remainder of this order, I refer to the original plaintiffs as "counterclaim defendants," and the original defendants as "counterclaim plaintiffs."

[5] This is in accord with Colorado caselaw.  *See New Crawford Valley, Ltd. v. Benedict*, 877 P.2d 1363 (Colo. App. 1993).  In *Benedict*, the Colorado Court of Appeals analyzed the general requirements of COCCA—specifically the continuity requirement—using federal RICO caselaw, including the Supreme Court's decision in *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989).

Mazo and Riascos control, was and is part of this conspiracy; the LLC was used as one of many

shell companies to funnel and hide the money and assets that the counterclaim defendants stole

from Merritt. *Id.* at 3–7. In responding to the continuity argument, counterclaim plaintiffs argue

that they properly plead both closed- and open-ended continuity. *Id.* at 12. After citing

paragraphs 122 and 135 of the counterclaims, counterclaim plaintiffs state the following:

> Taken as a whole, Merritt has alleged facts in his counterclaim that show that
> Josse Mazo and his wife Riascos both conspired and acted directly to commit
> multiple illegal acts with the ongoing goal of taking over, converting the assets of,
> and/or otherwise destroying and continuing to destroy John Merritt's businesses,
> trademarks, websites, brands, goodwill, assets, and reputation in the industry and
> community; and *that they will continue to engage in this behavior* in the future
> against not only Merritt, but by implication, anyone else they do business with.
> *Counterclaims* at ¶¶ 51-111.

*Id.* at 12–13 (emphasis added).

Because I find counterclaim defendants' continuity argument dispositive, I focus

exclusively on that argument.

2. The "Continuity" Requirement of RICO.

To prevail on their RICO claim, counterclaim plaintiffs must allege four elements: "(1)

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Robbins*, 300

F.3d at 1210 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). To "prove a

pattern of racketeering activity," counterclaim plaintiffs "must show that the racketeering

predicates are related, *and* that they amount to or pose a threat of continued criminal activity."

*See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240–42 (1989) (emphasis in original). In this

case, the parties do not dispute that the acts complained of are related. Instead, only the

continuity requirement of the pattern element set forth in *H.J.* is disputed. *See* ECF No. 22 at 8–

9. The Supreme Court describes the continuity requirement as

both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . . It is, in either case, centrally a temporal concept—and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear one to another, are distinct requirements.

*H.J. Inc.*, 492 U.S. at 241–42 (internal quotation marks, citations, and emphasis omitted).

a. "Closed-Ended" Continuity.

"A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *H.J. Inc.*, 492 U.S. at 242. As the Supreme Court explained, Congress's intent in enacting RICO was to combat long-term criminal conduct. *Id.* Therefore, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.* The Tenth Circuit has explained that this last directive can be broken down into two factors.

First, courts should consider the "duration of the related predicate acts." *Resolution Tr. Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993). Second, courts should analyze the "extensiveness" of the criminal conduct. *Id.* There are six subfactors to determine the extensiveness of the scheme: "(1) the number of victims, (2) the number of racketeering activities, (3) the variety of racketeering activities, (4) whether the injuries caused were distinct, (5) the complexity and size of the scheme, and (6) the nature or character of the enterprise or unlawful activity." *Gotfredson v. Larsen LP*, 432 F. Supp. 2d 1163, 1175 (D. Colo. 2006) (citing *Resolution Tr. Corp.*, 998 F.2d at 1543–44).

b. "Open-Ended" Continuity.

Open-ended continuity is evaluated on a case-by-case basis. *See Resolution Tr. Corp.*, 998 F.2d at 1543. A party can establish open-ended continuity "by showing that the predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit,

or that the predicates are a regular way of conducting the defendant's ongoing legitimate business or the RICO enterprise." *Id.* "A single scheme to accomplish one discrete goal, directed at a finite group of individuals, with no potential to extend to other persons or entities, rarely will suffice to establish a threat of continuing activity." *Erikson v. Farmers Grp., Inc.*, 151 F. App'x 672, 677–78 (10th Cir. 2005) (unpublished).

      3.  <u>Counterclaim Plaintiffs Fail to Sufficiently Allege "Continuity" Under Both Closed-<br>and Open-Ended Continuity</u>.

      I find that counterclaim plaintiffs fail to allege continuity under either definition. Starting with the first factor of closed-ended continuity—the duration of the related predicate acts— counterclaim plaintiffs assert that the criminal enterprise formed in late 2017. ECF No. 48 at ¶128. Although it is difficult to tell from the counterclaim exactly when the alleged thefts and takeover occurred, it appears that most of the acts began and ended by the end of 2017.[6] Therefore, because the predicate acts took place over weeks, and at most, a few months, the conduct does not satisfy the duration factor.

      Counterclaim plaintiffs similarly fail to satisfy the "extensiveness" factor. The alleged scheme carried out by counterclaim defendants is not a large-scale operation. The allegations concern one victim and the victim's businesses. Despite the fourteen claims that counterclaim plaintiffs allege, it seems plain to me that Merritt's allegations boil down to one act: that the movants conspired to steal his business. This amounts to a "single scheme to accomplish one discrete goal, directed at one individual with no potential to extend to other persons or entities." *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990) (internal citations and quotation marks omitted) (dismissing a RICO claim based on continuity because the alleged

---

[6] This timeline makes sense because plaintiffs filed the original 41-page complaint on April 10, 2018. *See* Complaint, ECF No. 1.

"pattern of racketeering activity" involved only a single scam affecting a single person who served as the sole shareholder and owner of the corporation); *see also Giese v. Giese*, No. 16-CV-01032-RBJ, 2017 WL 1407037, at *4 (D. Colo. Apr. 17, 2017) (holding that the plaintiffs failed to allege continuity because the alleged racketeering scheme had a single discrete goal—stealing money from plaintiffs—that was directed at a finite group of victims—the plaintiff and his company).

Counterclaim plaintiffs fail to plead open-ended continuity for the same reason—the movant must sufficiently allege a clear threat of future criminal conduct, which they have failed to do here. While counterclaim plaintiffs' argument is not completely baseless, it nonetheless fails to the basic pleading standards. They argue that counterclaim defendants have an ongoing goal of converting FSN's assets and destroying Merritt's businesses, trademarks, and reputation. ECF No. 23 at 12–13. They also allege that this somehow is the way movants regularly conduct their business. *Id.* at 13. I find these arguments unpersuasive. First, the counterclaim makes clear that most, if not all, of the alleged theft, conversion, and embezzlement already occurred. *See* ECF No. 48 at ¶¶89–101. Second, Mazo and Riascos are medical doctors. The allegation that they regularly conduct business in an illegal manner and will continue to do so is not plausible. As such, counterclaim plaintiffs have failed to allege a clear threat of future illegal conduct by the movants.

Accordingly, the Court finds that counterclaim plaintiffs have failed to sufficiently allege a RICO and COCCA violation against the movant counterclaim defendants, and therefore, the first and second claims in the amended counterclaim must be dismissed with prejudice as to the movants.

**B. Counterclaim Defendant FSN Int's Motion to Dismiss the First, Second, Third, Fourth, Seventh, and Eighth Claims of the Counterclaim.**

Counterclaim defendant Full Spectrum Nutrition Int, Inc. ("FSN Int") (not to be confused with FSN, LLC or FSN, Inc.) is a named defendant in ten of the fourteen counterclaims. It seeks to dismiss six of those claims.[7] *See* ECF No. 32. As I mentioned above, counterclaim plaintiffs responded to the motion, ECF No. 45. FSN Int did not submit a reply brief. I address the six claims below.

1. COCCA and RICO: Claims 1 and 2.

FSN Int's motion rests on the same grounds as fellow counterclaim defendants Mazo, Riascos, and M-R, LLC's motion because the first two claims broadly allege the same wrongdoing by all counterclaim defendants. FSN Int's motion essentially argues that counterclaim plaintiffs failed to meet the heightened pleading standards of Rule 9(b), and that the counterclaim fails the "continuity" requirement as explained in *H.J. See* ECF No. 32 at 4–9. Counterclaim plaintiffs' response regarding claims one and two is nearly identical to its response in the first motion to dismiss. *See* ECF No. 45 at 4–11.

Due to the similar facts and counterclaims, my analysis and findings from the first motion to dismiss—where I found that counterclaim plaintiffs failed to satisfy the continuity requirement required to properly plead a RICO violation—apply with equal weight to FSN Int's motion. Again, the same alleged predicate acts occurred over a relatively short amount of time, and the alleged criminal conduct is not extensive under the *Resolution Tr. Corp.* factors. Nor does the alleged conduct pose a threat of future criminal conduct. Finally, the paragraphs that counterclaim plaintiffs cite to suggest that the alleged criminal conduct is ongoing are wholly

---

[7] In its answer to the counterclaims brought against it, ECF No. 33, FSN Int answered the fifth, eleventh, twelfth, and fourteenth claims for relief of the counterclaim.

conclusory. *See* ECF No. 48 at ¶122 ("Counterclaim Defendants' pattern of racketeering consisted of multiple acts of racketeering by Counterclaim Defendants. The activities were interrelated, not isolated, and were perpetrated for the same or similar purpose by the same persons. The activities occurred in Colorado within the last ten years and are continuing."); *see also id.* at ¶135 (identical allegation as ¶122).

Accordingly, the Court finds that counterclaim plaintiffs have failed to sufficiently allege a RICO and COCCA violation against FSN Int, and therefore, the first and second claims in the amended counterclaim are dismissed with prejudice as to FSN Int.

### 2. Civil Conspiracy: Claim 3

The third counterclaim for relief alleges that FSN Int, along with all counterclaim defendants, agreed to "commit theft, embezzlement, fraud, conversion, trespass, breach of conduct, breach of fiduciary duty, and other unlawful goals against Counterclaim Plaintiffs." ECF No. 48 at ¶140. FSN Int's sole argument is that, because the alleged conspiracy is "grounded in fraud," this claim is subject to a heightened pleading standard. ECF No. 32 at 9. Because FSN Int believes that counterclaim plaintiffs have failed to allege specific facts linking it to any of the acts of the alleged conspiracy, it argues that the claim should be dismissed. *Id.*

In response, counterclaim plaintiffs argue that only certain alleged facts which form the third claim, such as fraud and forgery, are grounded in fault. ECF No. 45 at 11. However, they argue that other alleged acts, such as theft, embezzlement, defamation, breach of contract, and conversion, are not fraud-based allegations and thus are not subject to Rule 9(b). *Id.* Nonetheless, counterclaim plaintiffs argue that they alleged sufficient facts to show that FSN Int was part of the conspiracy. *Id.*

To establish a claim of civil conspiracy in Colorado, counterclaim plaintiffs must show:

(1) an object to be accomplished; (2) an agreement by two or more persons on a course of action to accomplish that object; (3) in furtherance of that course of action, one or more unlawful acts which were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and (4) damages to the plaintiff as a proximate result.

*Mecca v. United States*, 389 F. App'x 775, 779–80 (10th Cir. 2010) (unpublished). While fraudulent acts that form a civil conspiracy claim must be pled with specificity, *see* Fed. R. Civ. P. 9(b), acts not grounded in fraud need only meet the relaxed pleading standards under Rule 8(a). *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1153 (D. Colo. 2005).

I agree with counterclaim plaintiffs that most of their civil conspiracy claim is based on facts not grounded in fraud. Thus, counterclaim plaintiffs need only make a "short and plain statement . . . showing that [they are] entitled to relief" under their civil conspiracy theory. S*ee* Fed. R. Civ. P. 8(a). I find that they have met that standard. Although much of counterclaim plaintiffs' conspiracy allegations focus on the wrongdoing of Ferrero, Bishop, Swindler, and the companies those counterclaim defendants formed, *see* ECF No. 48 at ¶¶94, 95, 103–09, counterclaim plaintiffs barely make the necessary allegations against FSN Int.

To illustrate, the counterclaim alleges that Mazo registered FSN Int on January 5, 2018. *Id.* at ¶102. It then alleges that Ferrero created five companies, and that Swindler created one company. *Id.* ¶103–08. Counterclaim plaintiffs state that FSN Int and the other newly created entities were being used to convert, store, and hide Merritt's and FSN's property and assets. *Id.* at ¶109. These bareboned allegations provide just enough notice to FSN Int of the basis upon which counterclaim plaintiffs seek to recover under their civil conspiracy claim.

However, I also agree with FSN Int that any unlawful act based in fraud that forms the basis of the civil conspiracy claim fails to meet the heightened pleading standard. This includes

counterclaim plaintiffs' allegations of fraud, forgery, and any similar unlawful act based in fraud that they may allege later. Counterclaim plaintiffs do not point to any allegations in the counterclaim that plead the time, place, and content of the agreement to commit fraud or forgery by FSN Int.

For these reasons, the Court finds that the counterclaim sufficiently states a claim for civil conspiracy for those acts not grounded in fraud. But for the alleged fraud-based acts, I find that the counterclaim fails to meet the requirements of Rule 9(b). Thus, FSN Int's motion to dismiss the civil conspiracy claim against is granted in part and denied in part.

3. <u>Civil Theft: Claim 4</u>.

The fourth counterclaim for relief alleges that FSN Int, along with all counterclaim defendants, "knowingly and wrongfully obtained, retained, and exercised control over Counterclaim Plaintiffs' valuable property, including but not limited to hemp oil products, office equipment, personal property, inventory, bank accounts, software and electronic equipment, customer lists, website domains, social media accounts, and key corporate and financial documents." ECF No. 48 at ¶145. FSN Int argues that it could not have been a "taker" of property because it was not formed when the alleged taking occurred. ECF No. 32 at 10. While FSN Int acknowledges that it could be a person in possession of the property, it argues that the counterclaim fails to identify any specific property in FSN Int's possession.

Counterclaim plaintiffs point to one paragraph in their counterclaim where they allege that FSN Int was and is "being used to convert and hide" counterclaim plaintiffs' property and assets, and that it is "being used to store the proceeds from the sale of stolen property and to cash forged and illegally obtained checks and other financial instruments." ECF No. 48 at ¶109.

Counterclaim plaintiffs believe that this allegation sets forth sufficient allegations that FSN Int has retained or exercised control over something of value of another. *Id.*

I agree with counterclaim plaintiffs and find FSN Int's argument unconvincing. As to its first argument, the fact that Mazo did not form FSN Int until after the alleged theft is of no consequence under the statute. Under Colorado law, "[a] person commits theft when he or she knowingly obtains, *retains, or exercises control* over anything of value of another without authorization" and intends to permanently keep it or prevent the true owner from enjoying the thing's use or benefit. Colo. Rev. Stat. § 18-4-401(1)(a)–(e) (emphasis added). The counterclaim sufficiently alleges that FSN Int and the new corporate entities "are being used to . . . hide Merritt's and FSN, LLC's property," and that "[d]espite demands, counterclaim Defendants refused to return such funds, assets, and property." ECF No. 48 at ¶¶109, 147. This alone meets the basic pleading standards.

FSN Int's second argument—that the counterclaim fails to identify any specific property in FSN Int's possession—is baseless. As I noted above, paragraph 145 of the counterclaim lists ten specific items that counterclaim defendants allegedly retained. This is enough to defeat FSN Int's argument.

Accordingly, the Court finds that counterclaim plaintiffs have sufficiently alleged a civil theft claim against FSN Int, and therefore, FSN Int's motion to dismiss the fourth counterclaim is denied.

4. Trespass: Claim 7.

In the seventh claim for relief, the counterclaim alleges that the "Counterclaim Defendants unlawfully occupied and continued to occupy [FSN, LLC's facility at 781 Seedling Court] from November 2017 through approximately December 12, 2017, by changing the locks

to the property and otherwise controlling the property." ECF No. 48 at ¶167. The counterclaim then states that on "December 19, 2017, Merritt wrote a letter to the landlord of 781 Seedling Court letting him know that the property had been vacated and could be re-leased, in an effort to mitigate damages for both himself and FSN, LLC and FSN, Inc." *Id.* at ¶168.

FSN Int seeks to dismiss this claim for the same reason as the previous claim—FSN Int was not formed until January 5, 2018. ECF No. 32 at 11. On this claim, however, I agree with FSN Int. Counterclaim plaintiffs make clear that the alleged trespass occurred prior to 2018, and that they vacated the property in December 2017. Any allegations that FSN Int "may have been informally operating prior to this time" or was somehow responsible for the alleged trespass is speculative at best. Even construing the allegations in light most favorable to counterclaim plaintiffs, this conclusory and speculative allegation fails the basic pleading standards.

Accordingly, the Court finds that counterclaim plaintiffs have failed to sufficiently allege a claim of trespass against FSN Int, and therefore, the motion to dismiss claim seven against FSN Int is granted. This claim against FSN Int is dismissed with prejudice.

5. <u>Tortious Interference with Contract: Claim 8</u>.

Counterclaim plaintiffs allege that FSN Int, as well as all counterclaim defendants, intentionally interfered with the performance of certain contracts that Merritt and FSN, LLC intended to perform, including the lease for the property at issue in claim seven, contracts to deliver product, and contracts for software licensing. ECF No. 48 at ¶173. The counterclaim alleges that counterclaim defendants interfered with these contracts by stealing Merritt's business, wrongfully taking control of the property at 781 Seedling Court, and misusing the software license. *Id.* at ¶174.

FSN Int argues that the counterclaim fails to allege any facts which demonstrate that it has interfered with any third-party contracts. ECF No. 32 at 11–12. FSN Int's motion identifies the only three third-party contracts alleged in the counterclaim: (1) an unexecuted December 2017 contract with a supplier; (2) a contract executed in November 2017 in which no interference is alleged; and (3) the lease contract for the property at 781 Seedling Court. *Id.* Harping back on the fact that FSN Int did not exist until January 2018, FSN Int argues that it could not have interfered with these contracts. *Id.* Counterclaim plaintiffs respond by arguing that FSN Int "may have been operational prior to" January 2018 and thus may have interfered with these contracts. ECF No. 45 at 13–14.

Under Colorado law, a tortious interference claim has five elements: "(1) existence of a contract between the plaintiff and a third party; (2) knowledge of that contract by the defendant; (3) the defendant's intentional, improper interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff." *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, 171 F. Supp. 3d 1092, 1120 (D. Colo. 2016). Here, counterclaim plaintiffs agree that the motion to dismiss correctly identifies the contracts at issue. ECF No. 45 at 13–14. They then argue that FSN Int interfered with their ability to perform "contracts with buyers for products and contracts for software licensing." *Id.* The issue with counterclaim plaintiffs' argument is that they fail to cite to any allegations in the complaint that recognize the existence of a contract that extends into 2018. They broadly mention that counterclaim defendants knew of "contracts to deliver products, and contracts for software licensing," ECF No. 48 at ¶173, but counterclaim plaintiffs fail to allege the existence of these contracts. The counterclaim doesn't tell FSN Int who the contracts were with or when they were to be performed. Thus, counterclaim plaintiffs fail to show that FSN Int had knowledge of these

contracts.  And as for the contracts that were to be performed in 2017, FSN Int did not come into existence until 2018, so I fail to see how FSN Int interfered with these contracts.

Accordingly, because counterclaim plaintiffs have not pled sufficient factual allegations that FSN Int interfered with existing third-party contracts, the motion to dismiss claim eight against FSN Int is granted, and the claim is dismissed with prejudice.

## ORDER

(1) Counterclaim Defendants Mazo, Riascos, and M-R, LLC's partial motion to dismiss, ECF No. 22, is GRANTED.  Counterclaim plaintiffs' second request for leave to amend their counterclaim is denied.

(2) Counterclaim defendant FSN Int's partial motion to dismiss, ECF No. 32, is GRANTED in part and DENIED in part.  Counterclaim plaintiffs' second request for leave to amend their counterclaim is denied.

DATED this 28th day of January, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge